# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| JUSTIN OLTMANNS, | |
| Plaintiff, | CIVIL ACTION NO.: 4:18-cv-188 |
| v. | |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1475 CLERKS AND CHECKERS UNION, INC.; and GEORGIA STEVEDORE ASSOCIATION, INC.; | |
| Defendants. | |

## **O R D E R**

Presently before the Court are Defendant International Longshoreman's Association Local 1475 Clerks and Checkers Union, Inc.'s ("ILA") Motion to Dismiss, (doc. 20), Plaintiff's Response and Request for Leave to Amend Complaint, (doc. 27), and Defendant Georgia Stevedore Association, Inc.'s ("GSA") Motion to Dismiss, (doc. 30). Plaintiff Justin Oltmanns filed this case pursuant to Section 301 of the Labor Management Relations Act ("LMRA"). (Doc. 1 (citing 28 U.S.C. § 185).) In response to ILA's first Motion to Dismiss, (doc. 10), Plaintiff filed an Amended Complaint and added GSA as a Defendant, (doc. 16). ILA then filed its second Motion to Dismiss, (doc. 20), Plaintiff filed a Response and Request for Leave to Amend, (doc. 27), and GSA filed its first Motion to Dismiss, (doc. 30). ILA and GSA both filed Responses in opposition of Plaintiff's request. (Docs. 34, 35). For the reasons set forth below, the Court **GRANTS** Defendant ILA's Motion to Dismiss, (doc. 20), **GRANTS** Defendant

GSA's Motion to Dismiss, (doc. 30), and **DENIES** Plaintiff's Request for Leave to Amend, (doc. 27).

## BACKGROUND

Plaintiff works for Defendant GSA as a deck and dockmen at the Port of Savannah in Savannah, Georgia.[1]  (Doc. 16, p. 2; doc. 30, p. 4.)  Plaintiff is also a member of Defendant ILA—the International Longshoreman's Association and its local organization, Local 1475—and has been a member in good standing since 2007.  (Doc. 16, p. 2.)  Pursuant to an agreement reached by Defendants in 2013, ILA serves as the collective bargaining representative for GSA-employed workers performing deck and dockmen work ("deck and dockmen").  (Doc. 20, pp. 2–3.)  This agreement is reflected in a document titled "Memorandum of Understanding" (the "MOU").[2]  (Id. at p. 3; doc. 16, p. 4.)  The MOU outlines the duties of the deck and dockmen, provides that ILA is responsible for assigning work to deck and dockmen, and sets forth a priority system for ILA to follow when assigning available jobs.  (Doc. 1-2, p. 2–3; see doc. 34, p. 2.)  It also incorporates the "Clerk and Checker's Agreement of Local 1475,"—the collective

---

[1] Plaintiff does not explicitly identify GSA as his employer.  However, a court reviewing the sufficiency of a pleading under Federal Rule of Civil Procedure 12(b)(6) must "constru[e] the [allegations] in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citation omitted).  As explained below, Plaintiff's cause of action requires that he allege facts pertaining to the behavior of his employer.  Moreover, GSA was added as a defendant after ILA brought this requirement to Plaintiff's attention in its first Motion to Dismiss, and GSA refers to itself as Plaintiff's employer in its Motion to Dismiss.  As such, the Court assumes for purposes of this Order that GSA is Plaintiff's employer.

[2] The MOU was attached to Plaintiff's original Complaint but was not submitted with his Amended Complaint. (Doc. 1-2.)  However, Plaintiff refers to and/or quotes the MOU in paragraphs 22, 23, and 24 of the Amended Complaint, and paragraph 23 incorrectly states that the MOU is attached as "Exhibit A." (Doc. 16, p. 4.)  Additionally, these paragraphs in the Amended Complaint are identical to those in the original pleading.  While an amended pleading generally supersedes the former pleading in its entirety, the failure to submit the MOU with the Amended Complaint appears to be an oversight by Plaintiff's counsel.

bargaining agreement between Defendants—subject to the terms and modifications set forth in the MOU.  (Doc. 20, p. 3.)  The collective bargaining agreement had previously only applied to individuals working as clerks and checkers in the Port of Savannah.  (Id., pp. 2–3; see doc. 16, p. 4.)

Although he is employed as a deck and dockmen, Plaintiff receives clerk and checker assignments when such work is available through something called the "Z-4 Extra List."  (Doc. 16, p. 2.)  Clerk and checker work is assigned based on a worker's "seniority" status.  (See id. at p. 3.)  Per the collective bargaining agreement, seniority is to be "decided and enforced on a local basis;" here, the local seniority system for clerks and checkers is governed by the Savannah Clerks and Checkers Seniority Plan (the "Seniority Plan").[3]  (Doc. 20, p. 2; doc. 20-2, p. 3; doc. 20-3.)  The Seniority Plan provides that clerks and checkers seniority "shall be enjoyed" by individuals employed as clerks and checkers who work "700 or more hours" during a contract year.  (Doc. 20-3, pp. 2–4; doc. 16, p. 3.)  According to Plaintiff, "past port practice" has been to allow deck and dockmen hours to transfer for clerks and checkers seniority, and that clerks and checkers accrue hours for seniority classification by working as deck and dockmen.  (Doc. 16, p. 3.)  However, the MOU, the collective bargaining agreement, and the Seniority Plan are all silent on the issue of "crossover" hours.  (Id. at pp. 3–4.)  Because he worked as a deck and dockmen for over 700 hours in contract year 2014–2015 and over 1100 hours in 2015–2016, Plaintiff

---

[3] ILA submitted copies of the collective bargaining agreement and the Seniority Plan as exhibits to its Motion to Dismiss.  (Doc. 20, p. 2; doc. 20-2; doc. 20-3.)  Where a document is attached to a motion to dismiss, the Court may consider it "without converting the motion into one for summary judgment if the if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Plaintiff has not challenged the authenticity of the documents and refers to them throughout his Amended Complaint.  (Doc. 16, p. 4.)  Accordingly, the Court may properly review these documents in considering Defendants' Motions to Dismiss.

contends that he qualifies for clerks and checkers seniority. (Doc. 16, p. 3.) Plaintiff asserts that he "has not been afforded that right." (Id.)

Plaintiff filed a grievance regarding "the discrepancy in the seniority classifications," arguing that the hours he worked as deck and dockmen entitle him to clerks and checkers seniority. (Id. at p. 4; doc. 20, p. 3.) According to the Amended Complaint, his grievance was considered by the "Port Grievance Committee." (Doc. 16, p. 5.) The collective bargaining agreement establishes that the Port Grievance Committee is a dispute-resolution entity comprised of four individuals. (Doc. 20-2, p. 4.) GSA and ILA each have one representative on the committee. (Id.) On February 13, 2018, Plaintiff and both Defendants attended a grievance hearing where the Port Grievance Committee informed Plaintiff that his grievance would be "tabled due to pending litigation." (Doc. 16, p. 5.) According to Plaintiff, there was no litigation pending at that time. (Id.)

Plaintiff filed his Complaint on August 9, 2018, alleging that ILA breached its duty of fair representation in violation of Section 301 of the Labor Management Relations Act ("LMRA") and requesting attorney's fees. (Doc. 1.) After ILA filed its first Motion to Dismiss, (doc. 10), Plaintiff filed an Amended Complaint, adding GSA as a defendant and alleging that both ILA and GSA violated Section 301 of the LMRA by breaching their duties of fair representation (Count I). (Doc. 16, p. 5.) Plaintiff also reasserted his claim for attorney's fees (Count II). (Id. at p. 6.) ILA then filed its second Motion to Dismiss, which is presently before the Court. (Doc. 20.) In that Motion, ILA argues that when a duty of fair representation claim is brought pursuant to Section 301 of the LMRA, a plaintiff must plausibly allege both: "(a) that his employer breached the collective bargaining agreement; and, (b) that the union breached its duty of fair representation." (Id. at p. 5.) ILA contends that Plaintiff has failed to make either

4

showing. (Id. at pp. 5–8.) ILA also maintains that attorney's fees are not recoverable for this type of claim. (Id. at pp. 9–10.)

In his Response, Plaintiff first argues that courts may grant attorney's fees when there is an equitable basis to do so. (Doc. 27, p. 4.) The Response also contains Plaintiff's Request for Leave to Amend Complaint, wherein Plaintiff "concede[s]" that GSA was "mislabeled" in the Amended Complaint and requests permission to remedy the error. (Id. at p. 4.) In his proposed Second Amended Complaint, Plaintiff again relies on Section 301 of the LMRA and reasserts the duty of fair representation claim against ILA. (Doc. 27-1.) However, Plaintiff asserts a separate claim against GSA for breach of the collective bargaining agreement. (Id.) GSA then filed its first Motion to Dismiss, reiterating ILA's contentions that Plaintiff has not adequately pled his claim. (Doc. 30, p. 4–6.) Additionally, GSA and ILA both filed Responses in opposition to Plaintiff's Request to Amend. (Docs. 34, 35). Defendants argue that Plaintiff should not be granted leave to amend because the proposed amendments would be futile. (Doc. 34, p. 5; doc. 35, p. 4.)

## DISCUSSION

**I.  Standard of Review**

As noted above, Defendants move for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 20, 30.). However, Plaintiff requests leave to amend the Amended Complaint to remedy the deficiencies raised by ILA in its Motion. (Doc. 27, p. 4.) If the Court were to give Plaintiff leave to amend, the proposed Second Amended Complaint would "supersede[] the initial complaint and become[] the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted). In that instance, the Court could not rule on Defendants' Motions "because

5

the motion[s] [would] seek[] to dismiss a pleading that has been superseded." Wimberly v. Broome, No. 6:15-CV-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016) (collecting cases). Accordingly, the Court must resolve Plaintiff's Request for Leave to Amend prior to ruling on Defendants' Motions to Dismiss.

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend once as a matter of right—here, Plaintiff exercised that right by filing the Amended Complaint. (Doc. 16.) As to all other amendments, a plaintiff may only amend "with the opposing party's written consent or with the court's leave" which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The district court, however, need not 'allow an amendment . . . where amendment would be futile.'" Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). According to the Eleventh Circuit Court of Appeals, "[a] proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (citation omitted); see Christman v. Walsh, 416 F. App'x 841, 844 (11th Cir. 2011) (per curiam) (explaining that a proposed amendment would be futile where "the amended complaint would not survive a motion to dismiss."). Thus, a court considering whether an amendment would be futile must assess the proposed amendments under the same standard as would be applied to a motion to dismiss. See Christman, 416 F. App'x at 844 (reciting Rule 12(b)(6) standard of review when considering lower court's denial of a motion to amend); Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) ("[T]o determine futility, [courts should] apply "the same standard of legal sufficiency as applies under Rule 12(b)(6).").

A court reviewing the sufficiency of a pleading under Federal Rule of Civil Procedure 12(b)(6) must "accept[] the allegations in the complaint as true and constru[e] them in the light

most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citation omitted). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" does not suffice. Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. Rather, the complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." Twombly, 550 U.S. at 556 (citation and internal quotations omitted).

Here, the facts that Plaintiff asserts in the proposed Second Amended Complaint are identical to those in the Amended Complaint. (Docs. 16, 27-1.) The only material difference between the two pleadings is the addition of a claim against GSA for breach of the collective bargaining agreement in the proposed Second Amended Complaint. (Doc. 27-1, p. 5.) As such, the Court's determination as to whether the proposed Second Amended Complaint would survive a motion to dismiss necessarily applies to the Amended Complaint as well. Therefore, the Court's analysis will refer to both pleadings where possible and will focus on the proposed Second Amended Complaint where it differs from its predecessor. To the extent that the proposed Second Amended Complaint successfully states a claim for relief, the Court will grant Plaintiff's request to amend and deny Defendants' Motions as moot. To the extent that the

proposed Second Amended Complaint's amendment would be futile, the Amended Complaint would similarly fail to state a claim and the Court will grant Defendants' Motions to Dismiss. See Capone v. Aetna Life Ins. Co., No. 1:06-CV-3014-MHS, 2007 WL 9676529, at *2 (N.D. Ga. May 18, 2007) (focusing on proposed second amended complaint in motion to dismiss analysis).

**II.     Analysis**

Plaintiff asserts that Defendants are liable under Section 301 of the LMRA, codified at 28 U.S.C. § 185. (Doc. 16, pp. 1, 5; doc. 27-1, pp. 1, 6.)  This type of claim is commonly known as a "hybrid section 301/fair representation claim," and, "as a formal matter, comprises two causes of action." See DelCostello v. Teamsters, 462 U.S. 151, 164–65 (1983).  "The first cause of action involved is against the employer for breach of the collective bargaining agreement. This claim rests on section 301 of the Labor Management Relations Act." Coppage v. United States Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002) (citations omitted).  The second claim is against the union "for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." DelCostello, 462 U.S. at 164, 164 n.14.  To prevail on a hybrid section 301/fair representation (hereinafter, "hybrid 301") claim, a plaintiff must show that his or her employer acted contrary to the collective bargaining agreement *and* demonstrate "a breach of duty by the Union. The employee may . . . sue one defendant and not the other; but the case he must prove is the same whether he sues [the union, the employer] or both." Id. at 165 (citations omitted); Parker v. Connors Steel Co., 855 F.2d 1510, 1519 (11th Cir. 1988).

The proposed Second Amended Complaint, like the Amended Complaint, alleges that ILA breached its duty of fair representation. (Doc. 27-1, p. 5; doc. 16, p. 5.) However, Plaintiff seeks to add a claim against GSA for breach of the collective bargaining agreement—a claim

absent from the Amended Complaint. (Doc. 27-1, pp. 5–6.) Again, the factual allegations in the two pleadings are identical.[4] (Doc. 27-1, pp. 2–5; doc. 16, pp. 2–5.) Defendants oppose Plaintiff's request on the basis of futility. (Doc. 34, pp. 5–10; doc. 35, pp. 4–6.) Because both claims are essential to Plaintiff's overarching hybrid 301 cause of action, the failure to prove either claim is fatal to the entire hybrid 301 action. See Parker, 855 F.2d at 1521 ("Because the employees have failed to show any facts to support their claims that the Union breached its duty of fair representation[,] . . . the employees' hybrid § 301/fair representation claim . . . must fail."); Thompson v. ALCOA, 276 F.3d 651, 657 (4th Cir. 2002) ("[N]either claim is viable if the other fails."). Accordingly, the Court must determine whether Plaintiff plausibly alleges that ILA breached the duty of representation and that GSA breached the collective bargaining agreement.

### A. Breach of the Duty of Fair Representation

It is well-established in the Eleventh Circuit that a union has "an obligation to fairly represent the employee during the course of grievance proceedings." Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir. 1982). However, it is similarly well-established that "a union is allowed considerable latitude in its representation of employees." Id. at 1206. Indeed, where a union member has filed a grievance, a union breaches its duty of fair representation only where the "union's handling of the grievance was either arbitrary, discriminatory, or in bad faith." Id. (quoting Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979)). "[T]he employee's burden [of proof is] a substantial one." Id. (citations omitted) (internal quotation marks omitted). "[M]ere negligence is never sufficient to sustain a claim for

---

[4] For purposes of clarity, the Court will hereinafter only provide the record cite for the proposed Second Amended Complaint.

breach of the [duty of fair representation]." Roadway Exp., Inc. v. NLRB, 427 Fed. App'x 838, 841 (11th Cir. 2011) (per curiam).

In the Amended Complaint and proposed Second Amended Complaint (collectively, "the Complaints,") Plaintiff alleges that ILA's handling of his grievance regarding clerks and checkers seniority amounts to a breach of the duty of fair representation. (See Doc. 27-1, pp. 4–5.) According to Plaintiff, ILA "knew that Plaintiff was and is entitled to proper seniority classification" because it is "port practice" to grant clerks and checkers seniority based on deck and dockmen hours. (Id. at pp. 3–4.) Plaintiff claims that the ILA member on the Port Grievance Committee—the entity that "tabled" his seniority grievance—and those members representing him at the grievance hearing acted in contravention of this knowledge. (Id.) Specifically, Plaintiff alleges that the Port Grievance Committee falsely stated that his grievance would be set aside due to pending litigation and that his ILA representatives failed to assert defenses on his behalf at the grievance hearing. (Id. at pp. 4–5.) Plaintiff generally asserts that the foregoing actions rise to the level of arbitrary, discriminatory, and bad faith conduct. (Id. at p. 4.) As such, the Court will consider whether, under a liberal construction, any allegations in the Complaints could support an inference that ILA acted arbitrarily, discriminatorily, or in bad faith.

First, a union's actions are considered arbitrary only if "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez v. Screen Actors Guild, 525 U.S. 33, 45-46 (1998). "[N]either negligence of the union nor a mistake in judgment is sufficient to support a claim that the union

acted [arbitrarily]," and "nothing less than a determination that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice . . . ." Taaffe v. Bellsouth Telcomm., Inc., 204 F. App'x 823, 824 (11th Cir. 2006) (per curiam).

Here, the Complaints are devoid of facts showing that ILA's conduct was arbitrary. First, Plaintiff's allegations make clear that the Port Grievance Committee—not ILA alone—made the decision to "table" Plaintiff's request. (Doc. 27-1, p. 3.) Even assuming ILA could be liable in such a circumstance, the Complaints do not establish the decision itself was "irrational." See Air Line Pilots, 499 U.S. at 67. Plaintiff himself notes that "there is no written guidance or formal procedure that dictates how crossover hours are apportioned for purposes of seniority," meaning the committee did not have concrete terms guiding its consideration of Plaintiff's grievance. (Doc. 27-1, p. 3.) A decision to "table" or set aside a grievance in the absence of established rules is not unreasonable. Although he implies that the historical port practice of crossover hour-transferability should be binding on the Port Grievance Committee, Plaintiff's vague assertion of custom does not provide context to support a plausible or reasonable inference that the deviation from that custom was "so far outside a 'wide range of reasonableness' as to be irrational." See Marquez, 525 U.S. at 45–46; Taaffe, 204 F. App'x at 825 (court could not determine whether union's decision was arbitrary where no written guidelines for at-issue dispute).

Regarding ILA's conduct at the grievance hearing, the Court finds Plaintiff's conclusory allegation that ILA "failed and refused to assert defenses on [his] behalf" to be similarly unsupported. (See Doc. 27-1, p. 5.) Plaintiff does not expound upon this conclusory allegation, does not specifically allege what ILA could or should have done, and does not give any indication as to how the assertion of these "defenses" would have impacted the Port Grievance

Committee's decision. No context is provided at all. Without more, Plaintiff's barebones allegations are not sufficient to show that ILA acted arbitrarily in its representation.

Drawing all inferences in Plaintiff's favor, the Court finds that the allegations in the Complaints do not allow the Court to reasonably infer that ILA "acted with reckless disregard for the employee's rights or was grossly deficient in its conduct." Taaffe, 204 F. App'x at 824. Accordingly, Plaintiff has not plausibly alleged that ILA's actions were arbitrary.

Plaintiff also has not put forth sufficient allegations to show that ILA's actions were discriminatory. A union "may not discriminate against any member of the union or treat some members with hostility while favoring others." Smith v. Local 7898, United Steelworkers of Am., 834 F.2d 93, 96 (4th Cir. 1987). To prove that a union's conduct was discriminatory, "a plaintiff must adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" Beck v. UFCW, Local 99, 506 F.3d 874, 880 (9th Cir. 2007) (quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 403 U.S. 274, 301 (1971). Although Plaintiff generally alleges that clerks and checkers seniority has been granted on the basis of deck and dockmen hours, this equivocation does not provide a basis for the Court to plausibly infer that ILA treated Plaintiff "with hostility while favoring others." See Smith, 834 F.2d at 96. Further, the Complaints do not set forth any facts relating to ILA's subjective motivations, much less facts amounting to "substantial evidence" that ILA intentionally or severely discriminated against Plaintiff. See Beck, 506 F.3d at 880. Accordingly, the Court finds that Plaintiff's allegations are insufficient to establish that ILA's actions were discriminatory.

Finally, the Complaints fail to plausibly allege that ILA acted in bad faith. A determination that a union acted in bad faith "requires proof that the union acted (or failed to act)

due to an improper motive."[5] Yeftich v. Navistar, Inc., 722 F.3d 911, 916 (7th Cir. 2013). This burden of proof is high; indeed, "[t]here must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" Amalgamated Ass'n, 403 U.S. at 299 (quoting Humphrey v. Moore, 375 U.S. 335, 348 (1964)). Under a generous construction of the Complaints, Plaintiff implies that the ILA representative on the Port Grievance Committee and those representing him acted in bad faith because nonexistent litigation was used as a pretext to set aside his grievance. (Doc. 27-1, p. 5.) However, Plaintiff merely states that this action was done in "bad faith," and does put forth subsidiary facts speaking to any ILA representative's state of mind. Plaintiff supplies no factual detail to support his conclusory allegations, such as offering facts that suggest a motive for the ILA's alleged untruthfulness, that ILA intentionally mislead him, or that ILA even knew that the assertion was false. Without a factual basis to support his allegation, the Court finds that Plaintiff has failed to show that ILA acted in bad faith. See Yeftich, 722 F.3d at 917 (affirming lower court's dismissal where plaintiff failed to provide factual support for claim that union officials lied during grievance process).

In sum, the allegations in the Complaints do not support a finding that ILA's conduct was arbitrary, discriminatory, or in bad faith, and the Court therefore finds that Plaintiff does not plausibly allege that ILA breached its duty of fair representation. A hybrid 301 claim requires proof of violations by both the union and the employer, meaning Plaintiff's failure to show that ILA breached its duty of fair representation defeats his claim against GSA and his hybrid 301

---

[5] See also Local No. 48, United Bhd. of Carpenters & Joiners v. United Bhd. of Carpenters & Joiners, 920 F.2d 1047, 1054 (1st Cir. 1990) (quoting Black's Law Dictionary 127 (5th ed. 1979)) (defining bad faith as "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by any honest mistake as to one's rights or duties, but by some interested or sinister motive.'); see generally Jamison v. Air Line Pilots Ass'n, 635 F. App'x 647, 653 (11th Cir. 2015) (per curiam) (favorably citing id.).

action as a whole. See Parker, 855 F.2d at 1521. Thus, the proposed Second Amended Complaint would not survive a motion to dismiss and Plaintiff's amendments would be futile. See, e.g., Carr v. Allied Waste Sys. of Alameda Cty., No. C 10-0715 PJH, 2011 WL 1842835, at *4 (N.D. Cal. May 16, 2011) (plaintiff's proposed amendments futile where they failed to plausibly allege violation of duty of fair representation). Further, because the Amended Complaint relies on identical factual allegations, the Amended Complaint similarly fails. Accordingly, Defendants are entitled to dismissal as to Plaintiff's hybrid 301 claim.

### B.     Breach of the Collective Bargaining Agreement

Even if Plaintiff had adequately pled a fair representation claim, Plaintiff's proposed claim against GSA for breach of the collective bargaining agreement would also be futile.[6] A plaintiff asserting a hybrid 301 claim "must show that the employer violated the *terms* of the collective-bargaining agreement. . . ." Bartholomew v. AGL Res., Inc., 361 F.3d 1333, 1342 (11th Cir. 2004) (citing Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564, (1990)) (emphasis added). In the proposed Second Amended Complaint, Plaintiff asserts that GSA "violated the terms" of the collective bargaining agreement by denying him clerks and checkers seniority, yet also states that "there is no written guidance or formal procedure that dictates how crossover hours are apportioned for the purpose of seniority." (Doc. 27-1, pp. 3, 6.). Thus, not only does Plaintiff fail to cite specific provisions of the collective bargaining agreement, he explicitly notes that there is no written policy regarding "crossover hours" and

---

[6] Plaintiff does not assert this claim in his Amended Complaint.

seniority—making it impossible for GSA to have "violated the terms of the agreement." (Doc. 27-1, pp. 3, 6.)

Despite the absence of contractual terms on the matter, Plaintiff seems to allege that GSA breached the collective bargaining agreement by deviating from the unwritten "port practice" of allowing deck and dockmen hours to count towards clerk and checkers seniority classification. (Doc. 27-1, p. 3.) Said differently, Plaintiff claims that GSA breached a local custom—not the collective bargaining agreement. Plaintiff has not cited, and the Court is not aware of, any authority holding that an employer can be liable for such conduct. To the contrary, courts have routinely required a plaintiff asserting a hybrid 301 claim to rely on the actual terms of the collective bargaining agreement. See, e.g., Hueston v. Commc'ns Workers of Am., AFL-CIO CWA, Local 13000, No. 3:16-CV-01588, 2018 WL 558497, at *5 (M.D. Pa. Jan. 25, 2018) ("Plaintiff fails to cite a single provision of the CBA that was breached by [defendant]."); Young v. Int'l Union, UAW, Local 651, 148 F. Supp. 3d 602, 616, (E.D. Mich. 2015) (dismissal proper because "[p]laintiffs do not identify specific contract provisions that support their assertions of how Defendants breached the CBA and other agreements."); Llanos v. Brookdale Univ. Hosp. & Med. Ctr., No. 10-CV-1726 DLI RML, 2011 WL 809615, at *4 (E.D.N.Y. Mar. 2, 2011) ("[T]he claim for breach of the CBA fails because the complaint fails to allege what provisions [were] violated.").

Because Plaintiff does not cite to any provision of the collective bargaining agreement or allege facts supporting a breach thereof, the Court finds that Plaintiff fails to state a claim against GSA for breach of the collective bargaining agreement. See Bartholomew, 361 F.3d at 1342. This provides an additional basis to find that the proposed amendments would be futile, and that Defendants are entitled to dismissal. See, e.g., Ryals v. ILA Local 1771 (Clerks & Checkers), 33

F. Supp. 3d 634 (D.S.C. 2014) (failure to adequately plead breach of collective bargaining agreement by employer was fatal to plaintiff's claim against union).

Based on the analysis above, the Court finds that the Complaints do not plausibly allege that ILA breached its duty of fair representation or that GSA breached the collective bargaining agreement; as a result, Plaintiff's hybrid section 301/fair representation claim fails. Thus, the Court **DENIES** Plaintiff's Request for Leave to Amend, (doc. 27), as futile and **GRANTS** Defendants' Motions to Dismiss, (doc. 20, 30) as to Count I of the Amended Complaint.

### C.     Attorney's Fees

Defendants also move for dismissal as to Plaintiff's attorney's fee claim. (Doc. 20, p. 9; doc. 30, p. 6.) In actions brought pursuant to Section 301 of the LMRA, "a court can grant attorney's fees under its equity power if a party violates § 301(a) in bad faith, vexatiously, wantonly or for oppressive reasons." Varnes, 674 F.2d at 1369 (11th Cir. 1982). Such a grant would be inappropriate in this case. As explained throughout this Order, Plaintiff has not plausibly alleged any violation of Section 301 of the LMRA, nor is the Court aware of any behavior on the part of Defendants that rises to such a vindictive level. Accordingly, the Court declines to exercise its equity powers and **GRANTS** Defendants' Motions to Dismiss as to Count II of the Amended Complaint.

### CONCLUSION

Based on the foregoing, the Court the Court **DENIES** Plaintiff's Request for Leave to Amend, (doc. 27), **GRANTS** Defendant ILA's Motion to Dismiss, (doc. 20), and **GRANTS** Defendant GSA's Motion to Dismiss, (doc. 30). The Court **DISMISSES with prejudice** Plaintiff's action against Defendant International Longshoreman's Association Local 1475

Clerks and Checkers Union, Inc. and Defendant Georgia Stevedore Association, Inc., and **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED**, this 8th day of July, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA